1

2

3

4

5      UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON AT
                                      SEATTLE

6

7      GARY MERLINO CONSTRUCTION
       COMPANY, INC.,                              NO.

8                                  Petitioner,

9          v.                                      **PETITION TO COMPEL
                                                   ARBITRATION**

10     GENERAL TEAMSTERS LOCAL UNION #
       174, affiliated with the INTERNATIONAL
11     BROTHERHOOD OF TEAMSTERS.

12                                 Respondent.

13

14                                 **INTRODUCTION**

15         The General Teamsters Local Union # 174 engaged in a significant picketing event in

16     February 2022.   This strike prevented Gary Merlino Construction Company, Inc. from

17     completing ongoing required work on the Waterfront Seattle Alaskan Way – Elliott Way

18     construction project.   This project is governed by a Community Workforce Agreement

19     ("CWA").  The CWA contains a provision prohibiting work stoppages and lockouts.  It also

20     has an arbitration provision requiring the Parties to submit disputes to binding arbitration

21     pursuant to American Arbitration Association procedures.   Petitioner and Respondent are

22     signatories to the CWA.   The Respondent's actions violate the CWA, and are therefore

23     subject to arbitration.  The Respondent has repudiated the CWA by refusing to arbitrate a

24
       PETITION TO COMPEL ARBITRATION -1          **DAVIS GRIMM PAYNE & MARRA**
                                                  **701 Fifth Avenue, Suite 3500**
                                                  **Seattle, WA  98104**
                                                  **(206) 447-0182**

1  pending grievance. Petitioner therefore files this Petition seeking an Order compelling
2  arbitration as required by Article VIII of the CWA.

3  ## PETITION TO COMPEL ARBITRATION

4  ### I.  PARTIES, JURISDICTION, AND VENUE

5      1.1    Gary Merlino Construction Company, Inc. ("Petitioner") is, and at all relevant
6  times was, a Washington corporation operating in the construction industry. It maintains its
7  principal place of business in Seattle, Washington.

8      1.2    The General Teamsters Local Union #174 ("Respondent") is affiliated with the
9  International Brotherhood of Teamsters. It is a labor organization within the meaning of 29
10 U.S. Code § 152(5). It does business in Washington State and maintains its principal place of
11 business in Tukwila, Washington.

12     1.3    Petitioner and Respondent (collectively, "Parties") are parties to a Community
13 Workforce Agreement ("CWA"), which became effective April 8, 2015. The CWA was
14 negotiated by the City of Seattle, the Seattle King County Building and Construction Trades
15 Council ("KCBTC") and the Northwest National Construction Alliance II ("NNCA").

16     1.4    The CWA covers every City administered public works project estimated to
17 cost five million dollars or more. All construction contractors and subcontractors working on
18 covered projects must sign a letter agreeing to be bound by the terms of the CWA ("Letter of
19 Assent"). Respondent signed the CWA on or about January 18, 2018. Petitioner signed the
20 Letter of Assent on May 9, 2019. A true and correct copy of the CWA, including the signed
21 Letter of Assent (known as "Attachment A"), is attached to this Petition as Exhibit 1.

22     1.5    This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 185(c).
23 The Respondent maintains its principal place of business in Washington State. Furthermore,

24 PETITION TO COMPEL ARBITRATION -2          **DAVIS GRIMM PAYNE & MARRA**
                                                      **701 Fifth Avenue, Suite 3500**
                                                         **Seattle, WA 98104**
                                                            **(206) 447-0182**

1   Respondent engages in regular, sustained, substantial and continuous business activity in

2   Washington.  Respondent's representational activities include the negotiation of bargaining

3   rights, receipt and processing of grievances, advising on contract rights, and representation at

4   arbitration in exchange for dues that are collected as a result of wages paid in Washington.

5       1.6    Venue is appropriate in this Court pursuant to 29 U.S.C. § 185(a) and 29

6   U.S.C. § 185(c).  Both Petitioner and Respondent have established their principal place of

7   business in King County, Washington.  Both Parties operate out of Washington and

8   Petitioner's employees, who are represented by the Respondent, are all employed in

9   Washington.  Upon information and belief, Respondent's Executive Board members,

10   including Secretary-Treasurer Rick Hicks, reside in Washington.  This Court is a convenient

11   forum for the Parties.

12              **II.    FACTUAL BACKGROUND**

13      2.1    Petitioner and Respondent are signatories to the Community Workforce

14   Agreement.  Among the projects covered by the CWA is a contract for work on the

15   Waterfront Seattle Alaskan Way - Elliott Way construction project ("Alaskan Way Project").

16      2.2    At all times relevant to this dispute, Petitioner was contracted to perform

17   construction work, which includes providing concrete to the Alaskan Way Project.  Petitioner

18   uses its truck driver employees ("Drivers"), who are members of the Respondent, to deliver

19   concrete pursuant to the contract.

20      2.3    On February 11, 2022, Petitioner was scheduled to deliver concrete to the

21   Alaskan Way Project.  The scope of work under the CWA includes "concrete paving."  When

22   the Drivers arrived at Petitioner's Seattle Plant ("Seattle Plant") to load the trucks with

23

24   PETITION TO COMPEL ARBITRATION -3          **DAVIS GRIMM PAYNE & MARRA**
                                                **701 Fifth Avenue, Suite 3500**
                                                **Seattle, WA  98104**
                                                **(206) 447-0182**

1   concrete, they observed a large group of Respondent's members picketing and blocking the

2   entrance to the Seattle Plant.

3       2.4     Upon information and belief, Drivers were informed by the picketers that

4   under no circumstances would they be allowed to enter the Seattle Plant or drive their loaded

5   trucks to the Alaskan Way Project.

6       2.5     The Drivers called Petitioner reporting that they were unable to enter the

7   Seattle Plant to get concrete.  Several minutes later, the Drivers called again and stated that

8   the crowd was unruly and they felt unsafe.

9       2.6     Upon information and belief, the Drivers were called names, harassed and

10  intimidated by the picketers.

11      2.7     Upon information and belief, the Drivers attempted to contact the Respondent,

12  including by making phone calls to Respondent's Secretary-Treasurer, Rick Hicks, in an

13  attempt to calm the picketers.   Neither Mr. Hicks nor any other representative of the

14  Respondent answered their calls.

15      2.8     Due to the ongoing pressure and harassment, Petitioner instructed the Drivers

16  to leave the Seattle Plant and find a safe place to wait while additional law enforcement

17  presence was assembled.  Upon information and belief, when the Drivers left, the picketers

18  followed their vehicles and continued to yell obscenities and intimidate them.

19      2.9     After several hours of waiting, Petitioner was forced to cancel its scheduled

20  concrete delivery and placement work on the Alaskan Way Project due to the intimidating and

21  disruptive behavior of Respondent's members.

22      2.10    Section VII of the Parties' CWA - relating to work stoppages and lockouts -

23  prohibits "strikes, picketing, work stoppages, slowdowns or other disruptive activity" by the

24  PETITION TO COMPEL ARBITRATION -4            **DAVIS GRIMM PAYNE & MARRA**
                                                **701 Fifth Avenue, Suite 3500**
                                                **Seattle, WA  98104**
                                                **(206) 447-0182**

1   Respondent.  It also makes it a violation for Respondent to "sanction, aid or abet, encourage

2   or continue any stoppage, strike, picketing or other disruptive activity[.]"  In fact, under this

3   provision, the Respondent must exercise "all reasonable means to prevent or terminate any

4   such activity."

5       2.11   The Purpose section of the CWA contains a similar clause.  By signing the

6   contract, the Respondent "agree[d] to not engage in any strike, slow-down, or interruption or

7   other disruption or interference with the work covered by [the CWA]."

8       2.12   For disputes arising out of the CWA, the Parties have negotiated a grievance

9   procedure, detailed in Article VIII.  Under VIII of the CWA, grievances not resolved by the

10   Parties shall be decided in arbitration.  The arbitration is to be conducted pursuant to rules

11   issued by the American Arbitration Association ("AAA").  Decisions are final and binding.

12       2.13   In compliance with Article VIII, on February 14, 2022, Petitioner filed a

13   grievance concerning Respondent's February 11, 2022 picketing activity.  The grievance

14   listed violations of Article VII, the CWA's purpose, and all other provisions addressing

15   cooperative behavior on the job.  Respondent did not respond to the grievance.

16       2.14   On February 18, 2022, Petitioner advanced the grievance to Step 2.   On

17   February 22, 2022, the Petitioner proposed dates for a meeting between the Parties.  Again,

18   the Respondent did not respond.

19       2.15   On March 3, 2022, Petitioner sent a letter to Respondent advancing the

20   grievance to Step 3 arbitration. Petitioner followed up with Respondent on March 14, 2022,

21   requesting that Respondent sign an AAA request for an arbitrator list and appointment.

22   Respondent did not respond to either communication.

23

24   PETITION TO COMPEL ARBITRATION -5        **DAVIS GRIMM PAYNE & MARRA**
                                                           **701 Fifth Avenue, Suite 3500**
                                                               **Seattle, WA  98104**
                                                                  **(206) 447-0182**

2.16   In an attempt to resolve the dispute, Petitioner reached out to the CWA's administrator, the City of Seattle. Petitioner requested that the City of Seattle take action to enforce the provisions of the CWA, including the arbitration provision. On April 20, 2022, the City responded advising that: "The grievance process is…a tool for resolution of labor disputes between labor and management, not public owners…It is the City's understanding that nothing precludes [Petitioner] from seeking arbitration unilaterally should the [Respondent] be non-responsive."

2.17   On April 28, 2022, having already advanced the grievance to arbitration, Petitioner unilaterally submitted a request to AAA seeking an arbitrator list and appointment pursuant to the organization's labor arbitration rules. On or about May 6, 2022, Respondent challenged AAA's authority to hear the matter. Nevertheless, after reviewing the CWA, on May 26, 2022, AAA circulated a panel of arbitrators for the Parties to choose from. It advised that the selected arbitrator would determine the issue of arbitrability.

2.18   On June 3, 2022, Petitioner submitted the name of its first-choice arbitrator to AAA. Upon information and belief, the Respondent did not submit the name of any arbitrators for consideration.

2.19   On July 20, 2022, AAA announced that Arbitrator Kenneth Latsch had been "mutually selected" by the Parties to hear this matter.

2.20   Despite Arbitrator Latsch's appointment, Respondent continued its willful repudiation of the CWA. The Respondent has refused to participate in resolving this dispute as required by Article VIII. Petitioner therefore respectfully requests that this Court issue an Order compelling arbitration.

//

PETITION TO COMPEL ARBITRATION -6

**DAVIS GRIMM PAYNE & MARRA**
**701 Fifth Avenue, Suite 3500**
**Seattle, WA  98104**
**(206) 447-0182**

1

### III.   GROUNDS FOR RELIEF

2

**GROUND ONE: ISSUES OF ARBITRABILITY ARE PROPERLY DECIDED BY ARBITRATOR LATSCH.**

3

4       3.1     The Parties agreed, through Article VIII of the CWA, that issues of arbitrability are to be heard and decided by an arbitrator pursuant to the AAA rules of

5       arbitration.

6

7       3.2     In general, the question of arbitrability is an issue for judicial determination. *See Teamsters Union Local 287 v. Frito-Lay, Inc.*, 849 F.2d 1210, 1212 (9th Cir. 1988).

8       Arbitration, however, is a matter of contract. *Int'l Alliance of Theatrical Stage Emple. v.*

9       *Insync Show Prods., Inc.*, 801 F.3d 1033, 1041 (9th Cir. 2015).  Because of this, Courts must

10      enforce arbitration according to the contract's terms. *Id.*, at 1041-1042.  Thus, when Parties

11      agree that the arbitrator, rather than the court, will resolve threshold arbitrability questions,

12      the court must accept this as a delegation as long as the contract is clear and unmistakable. *Id.*

13

14      3.3     A 'clear and unmistakable' delegation can be accomplished "typically in the form of reference to arbitration rules that cover arbitrability[.]" *Alonso v. AuPairCare, Inc.*,

15      2018 U.S. Dist. LEXIS 143872, at *3 (N.D. Cal. 2018).[1]  In particular, the Ninth Circuit has

16      held that incorporation by reference to the AAA rules of arbitration is "clear and unmistakable

17      evidence" of the parties' intent to submit the issue of arbitrability to the arbitrator. *See*

18      *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015).

19

20

21

22

[1] While *Alonso* examines a motion to compel brought pursuant to the Federal Arbitration Act ("FAA"), it is still

23      instructive here.  The Ninth Circuit has recognized that the FAA can be used for guidance when deciding petitions to compel arbitration, even where the petition is brought under Section 301 of the LMRA, as it is here.

24      *See Int'l Alliance of Theatrical Stage Emple., at 1040.*

PETITION TO COMPEL ARBITRATION -7                    **DAVIS GRIMM PAYNE & MARRA**
                                                     **701 Fifth Avenue, Suite 3500**
                                                     **Seattle, WA  98104**
                                                     **(206) 447-0182**

3.4     Here, Article VIII(3) of the CWA incorporates the AAA rules of arbitration to govern the resolution of grievances.   Rule 3 of the AAA Labor Arbitration Rules reserves issues of jurisdiction and arbitrability for determination by the arbitrator.

3.5     Incorporation by reference of the AAA arbitration rules into the Parties' CWA clearly and unmistakably delegates the issue of arbitrability to the assigned arbitrator. Therefore, the matter is properly decided by Arbitrator Latsch.

**GROUND TWO: THE   COURT   SHOULD   COMPEL   THE   RESPONDENT TO ARBITRATE THE INSTANT DISPUTE.**

3.6     The District Court must compel the Parties to arbitrate this dispute as contemplated by the CWA.

3.7     "When a court determines that a collective bargaining agreement is in existence and that it provides for arbitration of a dispute, all remaining issues, including any procedural defenses, must be submitted to the arbitrator." *Int'l Union of Painters Allied Trades Dist. Council Local No 15 v. Diversified Flooring Specialist, Inc.*, 2007 U.S. Dist. LEXIS 108176, at *8 (D. Nev. Jan. 19, 2007). Thus, where, as here, the issue of arbitrability is properly before the arbitrator, "[t]he district court should not [] rule[] on the merits of that disagreement; rather it should [be] ordered that [it], along with the underlying dispute…be submitted to an arbitrator." *See e.g., Bhd. of Teamsters & Auto Truck Drivers Local # 70 v. Interstate Distrib. Co.*, 832 F.2d 507, 512 (9th Cir. 1987) (court restrained from deciding an issue within the arbitrator's jurisdiction).

3.8     The Parties signed and agreed to be bound by the Community Workforce Agreement. Article VIII of the CWA requires the Parties to submit unresolved grievances to binding AAA arbitration, including the question of whether the dispute is arbitrable. Under

PETITION TO COMPEL ARBITRATION -8                **DAVIS GRIMM PAYNE & MARRA**
                                                                **701 Fifth Avenue, Suite 3500**
                                                                **Seattle, WA  98104**
                                                                **(206) 447-0182**

these circumstances, the Court must submit this matter to Arbitrator Latsch.   An Order

compelling arbitration is therefore required.

WHEREFORE, Petitioner prays for relief as follows:

    1.    An Order compelling the Parties to arbitrate the grievance, discussed above;

    2.    Petitioner's attorney fees and costs for having to bring this Petition when

arbitration is clearly required by contract; and

    3.    For such other and further relief as the Court may deem just and proper.

DATED this 18ᵗʰ day of October, 2022

By: _____
John M. Payne, WSBA No. 11707
Alea M. Burner, WSBA No. 52540
DAVIS GRIMM PAYNE & MARRA
701 5th Avenue, Suite 3500
Seattle, Washington 98104-7055
Ph. (206) 447-0182 | Fax: (206) 622-9927
E-mail: jpayne@davisgrimmpayne.com
E-mail: aburner@davisgrimmpayne.com

**Attorneys for Gary Merlino Construction Co.**

**DAVIS GRIMM PAYNE & MARRA**
**701 Fifth Avenue, Suite 3500**
**Seattle, WA 98104**
**(206) 447-0182**

# EXHIBIT 1

# CITY OF SEATTLE

City Purchasing and Contracting Services



# COMMUNITY WORKFORCE AGREEMENT

## April 8, 2015
### as Amended through November 29, 2017

WITH

**Seattle Building and Construction Trades Council and the
Northwest National Construction Alliance II**

# TABLE OF CONTENTS

COMMUNITY WORKFORCE AGREEMENT City of Seattle .................................................... 3

PURPOSE ..................................................................................................................... 3

ARTICLE I - SCOPE OF AGREEMENT ............................................................................. 5

ARTICLE II - PROJECT CONDITIONS .............................................................................. 6

ARTICLE III - WAGE RATES AND FRINGE BENEFITS ....................................................... 7

ARTICLE IV - HOURS OF WORK, OVERTIME AND SHIFTS ............................................... 8

ARTICLE V - UNION RECOGNITION ............................................................................... 10

ARTICLE VI - MANAGEMENT'S RIGHTS ........................................................................ 11

ARTICLE VII - WORK STOPPAGES AND LOCKOUTS ...................................................... 12

ARTICLE VIII - DISPUTES AND GRIEVANCES ................................................................ 13

ARTICLE IX - JURISDICTIONAL DISPUTES ................................................................... 14

ARTICLE X - SUBCONTRACTING .................................................................................. 15

ARTICLE XI - CORE WORKERS ..................................................................................... 16

ARTICLE XII - EMPLOYMENT DIVERSITY ..................................................................... 17

ARTICLE XIII - APPRENTICESHIP UTILIZATION ........................................................... 17

ARTICLE XIV - VETERAN EMPLOYMENT ...................................................................... 18

ARTICLE XV - PREFERRED ENTRY .............................................................................. 18

ARTICLE XVI - TERM .................................................................................................... 20

ARTICLE XVII - GENERAL PROVISIONS ........................................................................ 20

ATTACHMENT A – LETTER OF ASSENT ........................................................................ 25

ATTACHMENT B – PRIORITY ZIP CODES ...................................................................... 26

ATTACHMENT C – CEMENT MASONS & PLASTERERS LOCAL 528 MOU ... ................. 27

ATTACHMENT D – PRE-JOB PACKAGE AND WAIVER .................................................... 28

ATTACHMENT E – AMENDMENT RE: EXECUTIVE ORDER 2017-01 ............................... 32

ATTACHMENT F - PRE-APPRENTICESHIP MOU ........................................................... 34

## COMMUNITY WORKFORCE AGREEMENT
### City of Seattle

This Community Workforce Agreement (CWA) is entered into April 8, 2015 by and between the City of Seattle (hereafter referred to as "City"), the Seattle King County Building and Construction Trades Council, and Northwest National Construction Alliance II acting on their own behalf and on behalf of their respective affiliates and members whose names are subscribed hereto and who have, through their duly authorized officers (hereafter referred to collectively as "Unions") executed this Agreement. The City and Unions are the signatory parties to this Agreement.

All construction contractors and subcontractors of whatever tier engaged in construction work for projects that are subject to this Agreement, shall sign a letter of assent (see Attachment A) and are bound by this Agreement as a condition of performing work on the project. Such Contractors shall be hereafter referred to as "Contractors." When the Agreement refers to only the prime contractor, the term "Prime Contractor" will be used alone, which includes primes that serve as a GC/CM, a design-builder, a general or a prime.

This CWA meets the intent and obligations set forth in Seattle Municipal Code (SMC) Chapter 20.37, which directs a priority hire program and an agreement executed between the Director and Labor Unions that represent workers who typically perform on City public works projects.

This CWA covers every City of Seattle administered public works project estimated to cost $5 million dollars or more at time of bid when including any contingency budget, except when a project is exempted by the Director of City Purchasing and Contracting Services for the Department of Finance and Administrative Services (hereinafter referred to as "Director") under conditions established by SMC 20.37. Such projects are hereafter referred to as "Covered Projects."


### PURPOSE

The parties to this Community Workforce Agreement, and Contractors who assent to work under this CWA, acknowledge that social equity, workforce diversity, development of local workers for construction careers as well as the timely completion of projects without delay, with skilled workers and agreed-upon procedures, is of benefit to the City. Public Works projects are important to the residents of Seattle and protect critical City infrastructure. This CWA enhances cooperative efforts towards those principles. This CWA is intended to establish a spirit of harmony, peace, and stability between labor and management, to support timely construction of public works projects.

3

Timely construction of projects requires substantial numbers of workers from construction and supporting crafts possessing skills and qualifications vital to its completion. This CWA supports training and dispatch of local craft workers to construct Covered Projects.

This CWA seeks to stabilize wages, hours and working conditions for craft workers, to ensure workers on Covered Projects have the same working conditions, and encourages close cooperation between the City, Unions and Contractors, for a satisfactory, continuous and harmonious relationship between all involved on these projects.

The parties, and Contractors who assent to this CWA, agree to abide by the terms and conditions in this CWA. This CWA establishes effective and binding methods for settlement of misunderstandings, disputes or grievances that may arise related to labor relations on a Covered Project. Such issues will follow the appropriate procedures described by this CWA in ARTICLE VIII (Disputes and Grievances) and ARTICLE IX (Jurisdictional Disputes). Unions agree to not engage in any strike, slow-down, or interruption or other disruption or interference with the work covered by this CWA. Contractors agree to not engage in any lockout.

This CWA supports SMC 20.42, to promote and ensure access for woman and people of color to meaningful work on City public works projects. This CWA also supports all Contractor efforts and obligations to utilize women-owned and minority-owned firms, as established under the public works project contract between the City and the Contractor. Nothing in this CWA shall minimize or relieve the Contractor from such contractual obligations.

This CWA supports development of a skilled construction workforce. This CWA supports hire of pre-apprentice graduates and apprentices in Washington State Apprenticeship and Training Council (WSATC) registered training programs, particularly women, people of color and other individuals facing significant employment barriers. SMC Chapter 20.38 requires Prime Contractors to ensure apprentices perform the rate of utilization that is directed in the City Public Works contract for each project. Such required utilization shall never be less than 15% and will not exceed 20% of all craft project labor hours. The Prime Contractors shall also ensure that they attain the required placement for pre-apprenticeship program graduates (from qualified Apprenticeship and Pre-Apprentice programs as defined within this CWA).

The local region has economically distressed areas with high unemployment and low incomes, as defined in SMC 20.37. This CWA instructs dispatch of workers from such economically distressed ZIP codes (Attachment B) in a manner that will achieve the requirements established by the City within each project contract, for the share of hours that will be performed by workers from such distressed areas.

4

This CWA seeks to support dispatch of workers to achieve the aspirational goals for hire of women and people of color, as established by the City within the contract for each Covered Project.

## ARTICLE I
## SCOPE OF AGREEMENT

Section 1. This CWA applies and is limited to the recognized and accepted historical definition of public works under the direction of and performed by Contractors of every tier. Public works, also called project work, shall include site preparation and dedicated off site work. All City of Seattle administered public works projects with a project construction budget plus contingency of $5 million and over at the time of bid shall be covered by this CWA, except when exempted by the Director of City Purchasing and Contracting Services (hereafter referred to as "Director") in accordance with Seattle Municipal Code Chapter 20.37.

Contractors of every tier who perform project work, must agree to accept and be bound by all CWA terms and conditions, and sign a Letter of Assent (Attachment A) before commencing work. The Prime Contractor shall assure all sub-tier contractors who perform project work will comply with this CWA.

If the CWA is silent on any issue, the local Collective Bargaining Agreement(s) that are currently in force at the time such issue emerges shall prevail; where there is a conflict, the terms and conditions of this Agreement shall supersede and override terms and conditions of any and all other national, area, or local collective bargaining agreements, except for all work performed under the NTL Articles of Agreement, the National Stack/Chimney Agreement, the National Cooling Tower Agreement, all instrument calibration work and loop checking shall be performed under the terms of the UA/IBEW Joint National Agreement for Instrument and Control Systems Technicians, and the National Agreement of the International Union of Elevator Constructors, with the exception of ARTICLE VII (Work Stoppages and Lockouts), ARTICLE VIII (Disputes and Grievances), and ARTICLE IX (Jurisdictional Disputes), which shall apply to such work on Covered Projects.

This is a self-contained, stand-alone Agreement in that Contractors are not obligated to sign any other local, area, or national agreement.

This agreement contains Attachments which may be updated from time to time. Updates to Attachment A (Letter of Assent) and Attachment D (Pre-Job Package and Pre-Job Waiver Forms) shall be reviewed and mutually agreed upon by the Joint Administrative Committee. The City has the sole discretion to update Attachment B (Priority ZIP code list).

Section 2. Nothing herein shall prohibit, restrict or interfere with any operation, work, or function that may occur at project sites or associated with Covered Projects.

5

Section 3. This CWA is binding on the signatory parties hereto and Contractors who sign a letter of assent; it does not apply to their parents, affiliates or subsidiaries.

Section 4. The City has the absolute right to award responsive and responsible bidders for project contracts without reference to the existence of any agreements between such bidder and any party to this Agreement; provided that such bidder is willing, ready and able to sign a letter of assent to comply with this Agreement, should the bidder be designated the successful bidder.

Section 5. Any work identified in RCW Chapter 39.12 (Prevailing Wages) will be subject to the CWA.

Section 6. This CWA does not apply to City workers and nothing herein shall prohibit or restrict City workers from performing project work. Once work or portions of work on the Covered Projects is completed and accepted by the City, the Agreement will have no further force or effect on such work, except when the Contractors are directed by the Prime Contractor or the City to engage in repairs, modifications, check-out, and written warranty by the manufacturer.

Section 7. The City, at its sole option, may terminate, change, delay and/or suspend any or all portions of the City's contract on a specific Covered Project.

Section 8. The liability of any Contractor and the liability of the separate unions under this Agreement shall be several and not joint. The Unions agree this Agreement does not have the effect of creating any joint employer status between or among the City and any Contractor.


### ARTICLE II
### PROJECT CONDITIONS

Section 1. Workers shall be at their place of work at the designated starting time and shall remain during working hours until their designated quitting time. As practicable given City contract requirements for the project, parking will be available to workers within a three (3) block radius of the project, at a location designated by the Prime Contractor. If the City determines dedicated parking is not possible, then the Prime Contractor will provide transportation to and from a designated parking location that the Prime Contractor provides, and the project worksite; in such situations, workers shall leave their place of work 15 minutes before end of shift for travel. Transportation to such a designated parking location shall be available to the workers throughout each scheduled work day. In lieu of compensated time for travel to designated parking, the Prime Contractor may elect to pay each worker for their parking costs, at an amount negotiated between the Seattle Building and Construction Trades Council and the Prime Contractor.

5

Section 2. In accordance with the requirements of the Occupational Safety and Health Act as amended; the provisions of the Washington Industrial Safety and Health Act (WISHA), as amended; the requirements of Title 296 WAC, Department of Labor and Industries, this CWA, as well as the applicable City contract, it shall be the exclusive responsibility of the Contractor to ensure the safety and health of its workers and worker compliance with any and all such safety rules mentioned above and as otherwise established by the Contractor or the City through any additional instruction. Contractors will provide a copy of the Contractor's safety rules at the pre-job conference. The Contractor is responsible for providing and maintaining personal protective equipment (PPE) per WAC 296, and the expectation for appropriate replacements schedules of such PPE may also be subject to pre-job discussion by the Union with the Contractor. Safety rules shall be posted at the job site and shall be uniformly enforced.

Section 3. Should a Contractor seek to change any safety rule during the course of a project, such proposed changes shall be discussed at Joint Administrative Committee meetings prior to implementation.

### ARTICLE III
### WAGE RATES AND FRINGE BENEFITS

Section 1. Contractors of every tier shall adhere to the applicable Federal and/or State prevailing wage rates for all craft workers, in effect at the time each Covered Project is bid. If both Federal and State prevailing wage requirements apply, the higher wage rate will prevail. Each September, Contractors of every tier shall incorporate all increases to such wage and benefits rates that are announced by the State or Federal government, as applicable, for the duration of each Covered Project. Federal updates to Davis Bacon wages will not be incorporated and updated until the annual September adjustment. Such wage increases shall be made effective the first full payroll period following the effective date. Wages shall be paid weekly on an established payday before quitting time. Workers who quit shall be paid on the next regular pay day by mail to their last known address unless such workers give adequate notice to do otherwise. Any worker who is discharged or laid off shall be entitled to receive all accrued wages immediately upon discharge or layoff. Notification of layoff shall be at the Contractor's discretion, but shall not be given later than the end of the work shift on the date the layoff is to be effective. A penalty for a delinquent paycheck shall be paid, in addition to all wages due to the worker, according to the applicable craft's CBA.

Section 2. The workweek for payroll purposes will begin with the first day shift on Monday morning and end on the following Monday morning (the workweek for any particular project may be modified by mutual consent). The Contractor will have the following options of making payment at the election of the employee in writing at the time of hire or with ten (10) business days' notice of a change: 1) negotiable check by a local bank, paid prior to quitting time at the job site; 2) direct deposit, into worker's bank account; or 3) by mail. If paid by mail, the check shall be postmarked no later than   two (2) business days prior to the established payday.

7

Section 3. The Contractor will furnish appropriate trust documents and signed letters of assent, to the Union that is covering the funds into which contributions shall be made. The Contractor will contribute to, and hereby becomes party to and is bound by bonafide pension, vacation, health and welfare, apprenticeship and training funds covering workers under this Agreement.

Section 4. If contribution payments for hours worked each month as defined above are not received by the Health and Welfare Fund office or Pension Fund office within the date prescribed by the appropriate trust funds, the Fund will make every effort to resolve the delinquency with the Contractor and will notify the Contractor, Prime Contractor (if different) and the City of such delinquency with all documentary evidence of the delinquency endorsed by the Fund.

## ARTICLE IV
## HOURS OF WORK, OVERTIME AND SHIFTS

Section 1. Hours of Work (Section 2 below) and Shifts (Section 4 below) may be pre-empted by the City contract and/or City through instruction to the Contractor, based on unforeseen project needs, provided adequate notice is given to the Union.

Section 2. Hours of Work: The standard workday shall consist of eight (8) hours of work scheduled between 7 a.m. and 7 p.m. with one-half hour designated as an unpaid period for lunch. The starting time may be different (staggered) on a crew basis. The standard workweek shall be five (5) days of work, Monday through Friday. Nothing herein shall be construed as guaranteeing any employee eight (8) hours of work per day or forty (40) hours of work per week.

Section 3. Overtime: All hours worked in excess of eight (8) hours per day, or forty (40) hours per week of straight-time, or outside of regular shift, Monday through Friday and Saturday shall be paid in accordance with applicable State and Federal prevailed wage requirements. There shall be no pyramiding of overtime pay. Holidays, pursuant to SMC 4.20.190 and RCW 1.16.050, are named in the City Covered Project contract specifications and include:
 1. New Year's Day (January 1)
 2. Martin Luther King Jr Birthday (Third Monday of January)
 3. Presidents Day (Third Monday of February)
 4. Memorial Day (Last Monday of May)
 5. Fourth of July
 6. Labor Day (First Monday of September)
 7. Veteran's Day (Eleventh Day of November)
 8. Thanksgiving (Fourth Thursday of November)
 9. Post Thanksgiving Friday (Friday immediately following Thanksgiving Day)
10. Christmas (December 25)

8

Section 4. Shifts: Shifts may be established for some or all crews when considered necessary by the Contractor or as directed by the City project contract. When three (3) shifts are worked, the first, or day shift shall be established on an eight (8) hour basis, the second shift shall be established on a seven and one-half (7 ½) hour basis and the third shift shall be established on a seven (7) hour basis. The pay for the second and third shifts shall be the equivalent of eight (8) hours pay at the employee's regular hourly rate. When shift work is established, it must continue for a minimum of five consecutive days on a schedule of 8 hours a day 5 days a week. If only two shifts are to be worked, each shift will work eight (8) hours for eight (8) hours pay. In any shift change 3 business days' notice to the affected union shall be provided. There shall be no split shifts. Other shift provisions may be established by mutual consent of the parties.

Section 5. Meal Period: Workers shall not be required to work more than five hours from the start of the shift without at least one-half hour unpaid uninterrupted break for lunch. This lunch period shall not begin earlier than three and one-half hours after the start of the shift. In the event that the Contractor establishes a ten-hour shift, the meal periods shall be at mid-shift. The worker meal periods may be staggered on an individual basis.

     (a) If a craft worker is required to work more than five hours before breaking for lunch, they shall be paid one-half hour at the applicable overtime rate and shall eat their lunch on company time.

     (b) An additional hour of overtime pay shall be provided in lieu of lunch.

     (c) Craft workers required to work more than two hours after the end of an eight hour shift and one hour after an ten hour shift shall be furnished a meal and paid one-half hour at the applicable wage rate and every five hours thereafter a craft worker shall be given time for a meal. Mealtime shall be paid at the applicable overtime rate and adequate lunch shall be provided by the Contractor at the job site.

     (d) An additional hour of overtime pay shall be provided in lieu of a second lunch.

Section 6. Rest Facilities: Adequate sanitary and restroom facilities will be provided at the work location to allow workers to wash-up before and after their meal. The Contractor shall furnish warm, dry, lighted rooms of ample size equipped with heat for drying clothes and with benches and tables for use during meal periods. These are to be situated close to the site of the work and shall not be used for storage of materials or equipment.

Section 7. Reporting to Work Pay: Any worker who reports for work (except when given notification not to report to work 2 hours prior to shift), and for whom no work is provided, shall receive four (4) hours pay. Any worker who reports for work and for whom work is provided, shall be paid for actual time worked but not less than four (4) hours. If the job is shut down because of adverse conditions that prevent work and are beyond the control of the Contractor, workers shall be paid for actual time worked but not less than two (2) hours. Procedures for the Contractor to use to cancel work shall be agreed upon at the pre-job conference.

9

## ARTICLE V
## UNION RECOGNITION

Section 1. The Contractor(s) recognize the signatory Unions as the sole and exclusive bargaining representatives for all craft workers within their respective jurisdictions, who are working on Covered Projects within the scope of this CWA.

Section 2. All workers covered by this CWA who are Union members and working for a Contractor signatory to a collective bargaining agreement other than this CWA, shall remain members in said Union during the project.

Section 3. No worker shall be required to become a member of a Union to be eligible for employment under this CWA. No Contractor shall be required to become affiliated with the Union to be eligible for work under this CWA. All workers not currently a member of the appropriate Union signatory to this CWA shall, however, be required to pay a representational fee for the period during which they are performing covered work.

Section 4. The Contractor shall honor Union dues and initiation fees check-off pursuant to receipt of properly authorized dues deduction cards signed by its worker, along with other lawful authorizations from employees providing for deductions from wages. The Union will notify the Contractor and the City in a timely manner if a Contractor is delinquent in remitting representation fees authorized by the worker.

Section 5. Union representatives shall have reasonable access to Covered Projects, provided they do not interfere with the work of the workers and if such representatives fully comply with the visitor, safety and security rules established for Covered Projects as established at the pre-job conference.

Section 6. The Business Representative(s) for each of the local Unions signatory hereto shall have the right to designate for each shift worked with each Contractor one (1) working journey-level worker as Steward for all related craft personnel, who shall be recognized as a Union representative. Such designated Stewards shall be qualified workers assigned to a crew and shall perform the work of their craft. Under no circumstances, shall there be a non-working Steward on the job.

Section 7. The working Steward shall be paid at the applicable wage rate for the job classifications in which they are employed.

Section 8. Steward(s) for each craft of the Unions employed on Covered Projects shall be permitted on Covered Projects site at all times. They shall not be subjected to discrimination or discharge for performing proper union business. The Unions agree that such business shall not unreasonably interfere with the Steward's work for the Contractor.

Section 9. The employee selected as Steward shall remain on the job if there is work within their craft for which they are qualified, willing and able to perform. The Contractor shall be notified in writing of the selection of each Steward. The Contractor shall give

10

the Unions twenty-four (24) hours prior written notice before laying-off a Steward.

Section 10. The Steward may not cause or encourage a work stoppage and, if found guilty of instigating such action, will be subject to disciplinary action by the Contractor, including discharge.

Section 11. The Steward's duties shall not include hiring and termination.

Section 12. The Stewards shall be given the option of working all reasonable overtime within their craft and shift provided they are qualified to perform the task assigned.


## ARTICLE VI
## MANAGEMENT'S RIGHTS

Section 1. Contractors retain full and exclusive authority for management of their operations. Except as limited by this CWA, Contractors shall direct their working forces at their prerogative, including, but not limited to hiring, promotion, transfer, lay-off or discharge for just cause. No rules, customs, or practices shall be permitted or observed which limit or restrict production, or limit or restrict the working efforts of workers. Contractors shall utilize the most efficient method or techniques of construction, tools, or other labor saving devices except when in conflict with provisions in the City contract. There shall be no limitations upon the choice of materials or design, nor shall there be any limit on production by workers or restrictions on the full use of tools or equipment. There shall be no restriction, other than may be required by safety regulations, on the number of workers assigned to any crew or to any service.

Section 2. The City will provide project oversight and administration through internal dedicated staff or third party administration. Copies of redacted certified payroll and daily worker sign in sheets will be made available upon request, redacted and subject to the limitations of law.

Section 3. The parties agree to participate in a Joint Administrative Committee (JAC) to address safety, targeted hiring, apprenticeship utilization, preferred entry, job progress and any other relevant issues that affect Covered Projects. The parties agree to address issues as they arise and resolve them in a timely manner. Only signatory parties to this Agreement shall have voting rights when the JAC makes a decision by vote.

The JAC shall allow interested contractors and community members to attend meetings, and receive copies of materials and information that are distributed by the parties. The City shall chair the Committee. The City and Unions shall each have one vote. When in disagreement, the Union and the City may, by mutual agreement, appoint an impartial third party to break the tie with a third vote. The City shall prepare copies of reports and

11

materials, and distribute to the JAC membership and any interested audience or stakeholders upon their request.

Section 4. Upon referral or dispatch from a Union, refusal by a Prime Contractor or Contractor to employ the dispatched worker (also known as a "turnaround"), requires a written explanation from the Contractor that shall be copied to the Prime Contractor (if different), City and affected Union, within two business days. The City shall make such turnaround explanations available in a timely way to other interested stakeholders, redacted as appropriate and subject to limitations of law.

Section 5. If the signatory Unions are unable to fill a request for employees within 2 business days, the Contractor shall request a referral from the City Job and Training Coordinator. If the City is unable to refer a worker that can satisfy the request, the City, Union and Contractors shall make any other reasonable efforts to comply with priority hire requirements and goals as practicable given the needs of the work to be performed.

Section 6. Each Contractor shall use the Craft Request Form when requesting a new employee for dispatch on Covered Projects and shall copy the City on all Craft Request Forms submitted to the Unions. The Unions and Contractors agree to maintain copies of all Craft Request Forms used on Covered Projects. The City may review and inspect any Craft Request Forms, upon request.


## ARTICLE VII
## WORK STOPPAGES AND LOCKOUTS

Section 1. During this CWA, there shall be no strikes, picketing, work stoppages, slowdowns or other disruptive activity for any reason by the Union, any applicable local Union or by any worker, and there shall be no lockout by the Contractor. Failure of any Union, local Union or worker to cross any picket line established at Covered Project sites violates this Article.

Section 2. The Union and every applicable local Union shall not sanction, aid or abet, encourage or continue any work stoppage, strike, picketing or other disruptive activity at the Contractor's project site and shall undertake all reasonable means to prevent or to terminate any such activity. No worker shall engage in activities that violate this Article. Any worker who participates in or encourages any activities that interferes with normal operations on a Covered Project, shall be subject to disciplinary action, including discharge, and if justifiably discharged shall not be eligible for rehire on the project for a period of not less than ninety (90) days.

Section 3. Neither the Union nor any applicable Local Union shall be liable for acts of workers for whom it has no responsibility. The International Union General President or Presidents will immediately instruct order and use the best efforts of his or her office to cause the Local Union or Unions to cease any violations of this Article. An International Union complying with this obligation shall not be liable for unauthorized acts of its Local

12

Union. The principal officer or officers of a Local Union will immediately instruct, order and use the best efforts of his or her office to cause the workers the Local Union represents to cease any violations of this Article. A Local Union complying with this obligation shall not be liable for unauthorized acts of employees it represents. The failure of the Contractor to exercise its right in any instance shall not be deemed a waiver of its right in any other instance.

### ARTICLE VIII
### DISPUTES AND GRIEVANCES

Section 1. This CWA promotes close cooperation between management and labor. Each Union will assign a representative to ensure Covered Projects are completed economically, efficiently, continuously, and without interruptions, delays, or work stoppages.

Section 2. The Contractors, Unions, and workers, collectively and individually, realize the importance to all parties to maintain continuous and uninterrupted performance of project work and agree to resolve disputes under the grievance arbitration provisions herein.

Section 3. Any dispute on a Covered Project that is specific to labor relationships (other than jurisdictional disputes) shall be considered a grievance and subject to resolution under the following. The Prime Contractor and City shall be given copies of all notices and invited to participate in any meetings or proceedings. Failure of the grieving party to adhere to the time limits established renders the grievance null and void. The time limits established may be extended by written mutual consent of the parties at the step where the extension is agreed.

Step 1. If a worker, Contractor or Union subject to this CWA feels aggrieved by a labor issue, the worker may give notice to their Union representative. Within ten (10) business days after becoming aware of the grievance, the Union representative (which may be the business agent or the Steward) shall give verbal or written notice to the Contractor's worksite representative. The notice shall describe the violation(s) and provision violated.

The Union representative and Contractor's work-site representative shall meet or discuss the dispute within 3 business days after such notice. Each party may keep meeting minutes and send a copy to the other. If the discussion does not resolve the issue, either party may escalate the grievance to Step 2.

Step 2. To escalate the grievance into Step 2, the Union may, within two (2) business days after the discussion, send a written notice to the Contractor setting forth the alleged violation(s), providing a description, the date on which the violation(s) provoking the grievance occurred, and the provisions of the CWA that are alleged to have been violated. The Union will send a copy to the City.

13

The local Business Manager and/or their designee and the Prime Contractor and sub-tier Contractor (if any), shall meet within seven (7) business days after the written notice was delivered to the Contractor, to arrive at a satisfactory agreement. The meeting will be scheduled to also include a designee of the Director on behalf of the City. The City will take meeting minutes and share with the Prime Contractor, sub-tier Contractor (if applicable), and the Union as soon as practicable after the meeting, which is intended to be within two (2) business days.

Step 3. (a) If the grievance has not been resolved within five business days under Step 2, either party may request that the grievance be submitted to an Arbitrator mutually agreed upon by them. The Contractor and the involved Union shall attempt mutually to select an arbitrator, but if they cannot do so, they shall request the American Arbitration Association to provide them with a list of arbitrators from which the Arbitrator shall be selected. The rules of the American Arbitration Association shall govern the conduct of the arbitration hearing. The decision of the Arbitrator shall be final and binding on all parties. The fee and expenses of such Arbitration shall be borne equally by the Contractor and the involved Local Union(s).

(b) The Arbitrator shall have the authority to decide only issues presented to him or her, and he or she shall not have authority to change, amend, add to or detract from this Agreement.

## ARTICLE IX
## JURISDICTIONAL DISPUTES

Section 1. The assignment of work will be solely the responsibility of the Contractor performing the work involved; such work assignments will be under the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (the "Plan") or any successor Plan.

Section 2. All jurisdictional disputes on a Covered Project, between or among Building and Construction Trades Unions and Contractors of any tier, shall be settled and adjusted according to the present Plan established by the Building and Construction Trades Department or any other plan or method of procedure that may be adopted by the Building and Construction Trades Department. Decisions rendered shall be final, binding and conclusive on the Contractors and Unions parties to this Agreement.

Section 3. All jurisdictional disputes shall be resolved without the occurrence of any strike, work stoppage, or slow-down of any nature and the Contractor's assignment shall be adhered to until the dispute is resolved. Individuals violating this section shall be subject to immediate discharge.

14

Section 4. Each Contractor will conduct a pre-job conference with the appropriate Building and Construction Trades Council 2 weeks prior to commencing work, but not more than 90 days prior to commencing work. The Prime Contractor and the City will be advised in advance of all such conferences and may participate if they wish.

After attending a pre-job conference once, Contractors may submit a waiver request to the City, waiving the requirement to attend future pre-job meetings when they are performing the same scope of work (see Pre-job Package and Pre-Job Waiver forms in Attachment C). The City and Unions will mutually agree upon granting any such waivers.

Should an emergency make it impracticable for a Contractor to attend a pre-job two weeks prior to placement, the Contractor may give less than two weeks' notice and request a pre-job meeting by contacting the City.

### ARTICLE X
### SUBCONTRACTING

Section 1. Every Contractor of any tier agrees that they will not subcontract any Covered Project work except to a person, firm or corporation who has signed a letter of assent. Any Contractor working on the Project shall, as a condition to working on said Project, perform all work **exclusively** under this Agreement.

Section 2. If a Union that traditionally represents construction workers in the geographic area of the Covered Project chooses not to become signatory to this Agreement, the Contractor and signatory Unions shall utilize one or both of the following options to ensure that work may be claimed by the non-signatory Union ("claimed work") so the work is completed without disrupting the Project:

(a) The signatory Unions will provide the Prime Contractor and all other Contractors who assent to this Agreement with the appropriate workforce to perform the claimed work.

(b) The Prime Contractor may utilize any Contractor to perform claimed work except that if such Contractor is party to an agreement with the non-signatory Union, such Union must agree in writing to abide by ARTICLE VII (Work Stoppages and Lockouts) and ARTICLE IX (Jurisdictional Disputes) for the contractor to be awarded work under this Agreement. Such Contractor may utilize its existing workforce and wage and benefit package. Such Contractors shall be required to agree in writing to be bound to and abide by this Article, ARTICLE VII (Work Stoppages and Lockouts), and ARTICLE IX (Jurisdictional Disputes). No other provision shall apply to such contractors unless required by the Contractor.

Section 3. The Prime Contractor, City and the Unions commit to provide outreach, and train, mentor and support woman and minority contractors on any Covered Project. The

15

City, Prime Contractor and Unions also will provide training and assistance about working under the CWA to any interested contractor and those contractors who may wish to bid on such work.

Section 4. Any Contractor conducting a bid process for work to be performed for a Covered Project, shall notify all bidders of the requirement to comply with the terms and conditions of this CWA.

Section 5. If a Contractor of any tier subcontracts any work covered by this Agreement, such subcontractors of all tiers, shall sign letter of assent to this CWA, prior to beginning work on the Project.

## ARTICLE XI
## CORE WORKERS

Section 1. The parties agree that non-signatory contractors of any tier often have core workers, also referred to as core employees, that they use commonly on their work and who contribute to the efficiency and competitiveness of those non-signatory contractors. The City of Seattle seeks to remove barriers for non-signatory Contractors so they can compete effectively on projects covered by the CWA without unnecessarily displacing their own workers to do so, provided that workers performing covered employment shall be compensated as specified in ARTICLE III (Wage Rates and Fringe Benefits) and observe the working conditions specified in ARTICLE II (Project Conditions) and ARTICLE IV (Hours of Work, Overtime and Shifts).

The non-signatory contractor may bring as many as three core workers onto the Covered Project and up to two apprentices enrolled in a WSATC program for each contract accordingly, provided that the ratio of apprentices to journey level workers is in compliance with the applicable apprenticeship program standards.

Section 2. Core Workers are those that have worked on the Contractor' payroll a minimum of one thousand five hundred (1500) hours within the craft classification over the last two year period from the date of dispatch to the Covered Project and have also been on the Contractors active payroll for at least sixty (60) out of the ninety (90) calendar days prior to the execution of the contract for the affected Contractor. All Core Workers shall meet the minimum journey level qualifications of the craft they are performing, and shall hold all required licenses and certifications for the work of their craft.

Apprentices are those that are enrolled in a WSATC program and are also one of the following: (1) a Priority Worker, (2) a Pre-Apprenticeship program graduate, (3) or an individual who furthers the City's aspirational goals for women and people of color.

Section 3. The Contractor shall provide detailed documentation at the pre-job conference identifying their Core Workers on the project and their scope of work and

16

submit certified payroll data to verify that the worker meets the required definition, redacted as appropriate. The City shall monitor Contractor compliance to this Core Worker definition.

## ARTICLE XII
## EMPLOYMENT DIVERSITY

Section 1. The Director will set a requirement for each project that directs the Prime Contractor to utilize workers from economically distressed ZIP codes ("Priority Workers") for a specified share of total hours worked on the project by apprentices and journey- level workers. Workers that qualify towards those requirements shall be called "Priority Workers."

Section 2. Unions shall first dispatch Priority Workers, and shall continue to prioritize the dispatch of such workers even after the required percentages are stabilized and suggest the Prime Contractor will achieve the requirements.

The Union shall prioritize dispatch of Priority Workers who are residents of Seattle ZIP codes first, and then dispatch Priority Workers from ZIP codes in King County (Attachment B).

Labor hours performed by workers living outside of Washington will be excluded from priority worker calculations that the City performs when calculating whether required percentages of total Priority Worker hours were achieved.

The Prime Contractor may receive a credit of up to 10% of the hours performed by Priority Workers, if they hire workers from the Priority ZIP codes who perform non-manual work and continue to employ said workers in these positions for the duration of the Contractor's work on the Covered Project. Such substitutes must be approved by the Director.

The Union will dispatch in a manner that best supports the aspirational goals for women and people of color for their utilization as agreed upon within the contract for the Covered Project.

## ARTICLE XIII
## APPRENTICESHIP UTILIZATION

Section 1. The parties and assenting Contractors agree to utilize apprentices from Washington State Apprenticeship Training Council (WSATC) programs for total hours established within the City contract for the Covered Project for no less than 15% and no more than 20% of total project hours on each project with the exact requirement set by the Director. The Prime Contractor shall provide a copy of their apprenticeship utilization plan upon request by the JAC. The Prime Contractor's apprenticeship utilization plan will be reviewed by the JAC and appropriate efforts shall be taken to increase utilization.

17

Section 2. The parties and assenting Contractors agree to hire and facilitate utilization of those WSATC apprentices on Covered Projects and to facilitate the participation of people of color, women and persons from economically distressed areas. The Director will establish a goal for labor hours performed by female apprentices and people of color who are apprentices, for each project and may substitute other efforts to meet the intent. The apprenticeship utilization plan provided by the Prime Contractor at the JAC shall describe how the Prime Contractor will achieve the goals for utilization of apprentices who are people of color and women.

Section 3. The parties and assenting Contractors shall assure that apprentices of all skill levels will be supervised by journey level workers in order to promote the safety, health and education of the apprentice.

## ARTICLE XIV
## VETERAN EMPLOYMENT

Section 1. This CWA desires to facilitate the entry into the building and construction trades of veterans interested in careers in the building and construction industry. The Contractors and Unions agree to utilize the services of the Center for Military Recruitment, Assessment and Veterans Employment ("Center"), the Center's "Helmets to Hardhats" program, and other appropriate veteran programs, to serve as resources for preliminary orientation, assessment of construction aptitude, referral to WSATC registered apprenticeship programs or hiring halls, counseling and mentoring, support network, employment opportunities and other needs as identified by the parties.

Section 2. The Unions, Contractors and City Job and Training Coordinator agree to coordinate with the Center and other appropriate veteran referral sources, to maintain an integrated database of veterans interested in working on Covered Projects, and of apprenticeship and employment opportunities for Covered Projects. To the extent permitted by law, the Unions will give credit to such veterans for bona fide, provable past experience.

Section 3. This agreement will include Helmets to Hard Hats qualified applicants and other qualified veteran applicants from within the economically distressed ZIP codes as defined by the City, as part of the Priority Worker hours that the contract shall require the Prime Contractor to achieve for the Covered Project.

## ARTICLE XV
## PREFERRED
## ENTRY

Section 1. The parties seek to construct and expand pathways to good jobs and lifetime careers for Priority Workers, women and people of color, through collaborative workforce development systems that also likely includes community-based training providers and

18

WSATC registered apprenticeship programs. This facilitates a workforce reflective of the diversity and needs of Seattle and the local region, supporting goals of workforce inclusiveness.

Section 2. This CWA establishes a Preferred Entry program that will identify individuals, especially women, people of color, and those from economically distressed ZIP codes as defined by the City, who meet entry standards for WSATC apprenticeship programs that allow qualified preferred entry applicants into their programs.

Preferred Entry candidates shall be placed with Contractors working on Covered Projects, subject to an interview if requested by the Contractor. Selected Preferred Entry candidates who are not already first year apprentices shall become first period apprentices.

To give preferred entry apprentices an opportunity to become established in their apprenticeship training, Contractors must employ Preferred Entry candidate for 700 hours, in order to count that candidate toward the Preferred Entry requirement. The Director may reduce the number of required hours to a minimum of 350 hours on Covered Projects that have insufficient total apprentice hours to support placements of a 700 hour duration.

Section 3. The Prime Contractor shall ensure one (1) of each five (5) apprentices who have worked at least 350 or 700 hours, whichever minimum is set by the Director, on the Covered Project is from a recognized Pre-Apprenticeship program. Such programs include the Apprenticeship and Non-Traditional Employment Program for Women (ANEW), YouthBuild, Helmets to Hard Hats, King County Pre-Apprenticeship Construction Education (KC PACE), Ironworkers Pre-Apprenticeship Program, TERO Vocational Training Center (TVTC), Seattle Vocational Institute – Pre-Apprenticeship Construction Training (PACT), the Trades Related Apprenticeship Coaching Program (TRAC), Cement Masons Pre-Apprenticeship Program, or other mutually agreed-upon programs that serve people living in economically distressed ZIP codes, people of color, women and/or veterans. The list of such programs may be updated by mutual agreement between the City and the Seattle Building and Construction Trades Council.

Section 4. The Unions and Prime Contractor agree to ensure hiring of Preferred Entry apprentices during the early start of work on the Covered Projects. The City, Unions and Contractors recognize Preferred Entry Apprentices that are within the first two steps and/or years of their apprenticeship program.

Section 5. If a preferred entry apprentice leaves, Contractors will replace that apprentice with another from the preferred entry program.

Section 6. The hours worked by eligible Preferred Entry qualified applicants hired from such distressed economic ZIP codes will count towards accomplishment of the Priority Worker requirements.

Section 7. Identification and selection of qualified applicants shall include the

19

Contractor(s), where candidates have been proposed by Contractors and the individual apprenticeship program's designated representative. The final selection decision will be the responsibility of the Joint Apprenticeship Training Committee (JATC).

## ARTICLE
## XVI TERM

Section 1. This agreement shall commence upon execution by all parties and shall continue in full force for a period of five years. The parties may mutually agree to amendments or modifications of this agreement.

Section 2. The agreement shall continue in full force and effect for each Covered Project throughout the duration of each project and until the last of the Covered Projects concludes. Either party desiring to extend this agreement beyond the intended five year term, shall make such intention known to the other party by written notice as soon as practical, which may be as early as six months prior to the otherwise effective expiration date for this agreement.

## ARTICLE XVII
## GENERAL PROVISIONS

Section 1. Titles and headings of sections and provisions in this agreement are for convenience only.

20

**NOTE:** The following provisions are determined by local collective bargaining:

1. Referral Procedures

   [Note, however, that any referral provision must contain : " There shall be   no discrimination against any employee or applicant for employment because of his or her membership or non-membership in the union or based upon race, creed, color, sex, age or national origin of such employee or   applicant."]

2  General Savings Clause

21

IN WITNESS WHEREOF, in consideration of the terms, conditions, and covenants contained herein, or attached or incorporated and made a part hereof, the parties have executed this Contract by having their authorized representatives affix their signatures below.

City of Seattle

Signature: Liz Alzeer, Director of City Purchasing and Contracting Services

Date: 1/16/18

Seattle/King County Building Trades Council
Monty Anderson
Executive Secretary

Signature
12-14-17

Date

Northwest National Construction Alliance II
Dan Hutchins

Signature
12-22-17

Date

Pacific Northwest Regional Council of Carpenters
Ryan Hyke

Signature
12-18-2018

Date

International Union of Operating Engineers Local 302
Ron Dahl
Business Representative

Signature
12-27-17

Date

BAC Pacific Northwest ADC
Benny Wright
Business Representative

Signature
12-28-17

Date

Boilermakers Local 502
Tracey Eixenberger
Business Manager

Signature
1-11-18

Date

**Cement Masons Local 528**
Eric Coffelt
Business Manager

Signature

Date
12-19-17

**Elevator Constructors Local 19**
Patrick Strafer
Business Manager

Signature

Date
1 - 4 -18

**Iron Workers Local 86**
Chris McClain
Business Manager

Signature

Date
1 - 9 - 18

**Laborers Local 242**
Dale Cannon
Business Manager

Signature

Date
1 - 10 - 18

**Roofers Local 54**
Steve Hurley
Business Manager

Signature

Date
12/19/17

**Electrical Workers Local 46**
Bud Allbery
Business Manager

Signature

Date
12 - 29 - 17

**Heat and Frost Insulators & Allied Workers Local 7**
Todd Mitchell
Business Manager

Signature

Date
1 - 3  2018.

**IUPAT District Council 5**
Denis Sullivan
Business Manager

Signature

Date

**Plumbers & Pipefitters Local 32**
Jeffrey J. Owen
Business Manager

Signature

Date
1/3/2018

**Steel Metal Local 66**
Tim Carter
Business Manager

Signature

Date
1 - 4 - 2018

Sprinkler Fitters Local 699
Stanton Bonnell
Business Manager

Signature

Date    1-7-18

Teamsters Local 174
Rick Hicks
Secretary Treasurer

Carl R Harris

Signature

Date    1/31/ 2018



**ATTACHMENT A**
**LETTER OF ASSENT**



The undersigned, as a Contractor(s) or Subcontractor(s) on a Contract which is part of the

### PW# 2018-085: Waterfront Seattle Alaskan Way - Elliott Way (S. King St. to Bell St.)

Project, for and in consideration of the award of a Contract to perform work on said Project, and in further consideration of the mutual promises made in the Community Workforce Agreement, a copy of which was received and is acknowledged, hereby:

(1)    On behalf of itself and all its employees, accepts and agrees to be bound by the terms and conditions of the Community Workforce Agreement, together with any and all amendments and supplements now existing or which are later made thereto, and understands that any act of non-compliance with all such terms and conditions, may subject the non-complying Contractor or employee(s) to being prohibited from the Project Site until full compliance is obtained. The City reserves the right to exercise other enforcement mechanisms in lieu of prohibition from the Project Site.

(2)    Certifies that it has no commitments or agreements which would preclude its full compliance with the terms and conditions of said Community Workforce Agreement.

(3)    Agrees to secure from any Contractor(s) (as defined in said Community Workforce Agreement) which is or becomes a Subcontractor(s) (of any tier), a duly executed Letter of Assent in form identical to this document prior to commencement of any work.

| Estimated Start Date | Estimated end date |
|---|---|
| July 15th 2019 | May 15th, 2023 |
| **UBI Number** | **Print Name and Title** |
| 600 584 952 | Charlie Oliver, President |
| **Phone Number** | **Contractor/Company name** |
| 206-762-9125 | Gary Merlino Construction Co., Inc. |
| **General Contractor** | **Subcontractor to (if applicable)** |
| Gary Merlino Construction Co., Inc. | |
| **Jobsite Address** | **Billing Address** |
| Downtown Seattle Alaskan Way and Elliott Way from S. King Street to Bell Street | 9125 10TH AVE S SEATTLE WA 98108-4612 |
| **Date** | **Signature of Authorized Representative** |
| May 9th 2019 | |

ATTACHMENT B

 **PRIORITY HIRE in the CITY of SEATTLE and KING COUNTY**

Economically distressed ZIP codes in Seattle and King County are based on several indicators:
1. People living under 200% of the federal poverty line.
2. Unemployment rate.
3. Those over 25 without a college degree.

Priority Hire Economically Distressed ZIP Codes



| Tier 1 | Seattle Neighborhood | ZIP Code |
|--------|----------------------|----------|
| Tier 1 | Downtown | 98101 |
| Tier 1 | Capitol Hill/Eastlake | 98102 |
| Tier 1 | Downtown/ID | 98104 |
| Tier 1 | Delridge | 98106 |
| Tier 1 | Ballard | 98107 |
| Tier 1 | S. Beacon Hill/South Park | 98108 |
| Tier 1 | Interbay/Queen Anne | 98109 |
| Tier 1 | Rainier Valley/Rainier Beach | 98118 |
| Tier 1 | Belltown | 98121 |
| Tier 1 | Central District | 98122 |
| Tier 1 | Lake City/Northgate | 98125 |
| Tier 1 | Delridge/High Point | 98126 |
| Tier 1 | Bitter Lake/NW Seattle | 98133 |
| Tier 1 | N. Beacon Hill | 98144 |
| Tier 1 | White Center | 98146 |
| Tier 1 | Rainier Beach/Skyway | 98178 |

| Tier 2 | King County Neighborhood | ZIP Code |
|--------|--------------------------|----------|
| Tier 2 | Kent/Auburn | 98002 |
| Tier 2 | Federal Way | 98003 |
| Tier 2 | Bellevue | 98007 |
| Tier 2 | Federal Way | 98023 |
| Tier 2 | East Kent | 98030 |
| Tier 2 | Northeast Kent | 98031 |
| Tier 2 | West Kent | 98032 |
| Tier 2 | Pacific | 98047 |
| Tier 2 | South Renton | 98055 |
| Tier 2 | Northeast Renton | 98056 |
| Tier 2 | Central Renton | 98057 |
| Tier 2 | Burien | 98148 |
| Tier 2 | Boulevard Park/Tukwila | 98168 |
| Tier 2 | SeaTac/Tukwila | 98188 |
| Tier 2 | Des Moines | 98198 |

Source: Community Attributes Inc., Priority ZIP Codes, 2016.
*Updated January 2017*
Department of Finance and Administrative Services
700 Fifth Avenue, 41ˢᵗ Floor

Tel (206) 684-0444
LaborEquity@seattle.gov

26



**PCMIA**

*America's Oldest Building and Construction Trades International Union, Established 1864*

# Cement Masons & Plasterers Local 528

## MEMORANDUM OF UNDERSTANDING
## CEMENT MASON PROVISIONS

### Community Workforce Agreement
### City of Seattle

Because of the unique nature of the Cement Mason work, the following provisions have been included for application to Cement Masons only:

**A.     Start of Pour:** The Cement Mason crew must be on the job at the start of the shift in which finishing will be required and assist with the pour on slab work or work preparatory to concrete finishing coming within the jurisdiction of the Cement Masons.

**B.     Multiple Shift Operation:** There will be no shift operation on slab work except by mutual agreement. Shifts may be established when considered necessary by the employer.

**C.     Shifts and Hours of Work:** If a four/ten hour shift is established at the straight time rate, any Cement Mason dispatched for a one day pour will be paid at the eight (8) hour straight time plus two (2) hour overtime rate.

**D.     Reporting and Minimum Hours Pay:**

1. Employees reporting for work and for whom no work is provided, except when given notification not to report to work, shall receive four (4) hours at the regular straight-time hourly rate.

2. When the shift is started, four (4) hours shall be allowed. If the second half is started, then a whole shift shall be allowed, unless an employee leaves of his own volition or is discharged for cause. In such event, he shall be paid for actual time worked.

**E.     Work Hours Shall Be Uniform for ALL CRAFTS**

| For the Union: OPCMIA Local 528 | For: *City of Seattle* |
| --- | --- |
| | PROJECT OWNER |
| SIGNATURE | SIGNATURE |
| *Eric Cottell* | *Liz Hyder* |
| PRINT NAME | PRINT NAME |
| *12-19-17* | *11.9.17* |
| DATE | DATE |

6362 Sixth Avenue South  ·  Seattle, WA 98108  ·  (206) 441-9386  ·  Fax (206) 441-9018  ·  opcmialocal528.org





Please fill out the following pages. We recommend that you be as thorough as possible. If you have questions, please contact your contractor or your CWA Administrator.

## Request for Waiver     Yes ◯     No ⦿

The Contractor listed above requests a waiver of the Pre-Job Conference attendance requirement contained within the CWA. The contractor recognizes and agrees that the Seattle Building and Construction Trades Council and the Affiliated Local Unions signatory to the CWA, retain their rights as stipulated in the CWA to deny this waiver request, and to challenge any proposed trade assignment. A contractor working for the first time under this CWA cannot waive attendance.

| Seattle Building Trades Council | | Date | | Approved | Yes ◯ | No ◯ |
|---|---|---|---|---|---|---|

## Contractor Information

| Contractor/Subcontractor Name | |
|---|---|
| Pre-Job Meeting Date | Time: 10:00 am<br>14675 Interurban Ave S., Tukwila WA 98168 |
| Project Name/Contract # | |
| Contract Dollar Amount | Intent # |

| Office Contact: | | Phone: | | Email. | |
|---|---|---|---|---|---|
| Superintendent | | Phone: | | Email: | |
| Safety Representative | | Phone: | | Email. | |

### Scope of Work
(Describe the scope of work to be performed)

Will you be subcontracting to additional sub-contractors?     Yes ⦿     No ◯
If yes, list sub-contractors and work description:

| Sub-Contractor Name | Work Description |
|---|---|
| | |
| | |
| | |
| | |

Page 1 of 4

**Current Union Agreements**

| | | |
|---|---|---|
| Approx. Job Start Date: | | Approx. Job End Date: |
| Work Shifts: | | |
| Weekly Pay Day | | |

## Proposed Trade Assignment

All Workers, including core employees, must be dispatched through Union hall. List trade assignments by craft including scope of work description for each assignment. List each piece of equipment planned for use by craft. Include all equipment and tools. If more space is required, attach additional sheets.

| Craft | Scope | Equipment/Tools |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

Page 2 of 4

| Project Craft Demand List | | | |
|---|---|---|---|
| Craft | Peak | Average | Apprentices |
| Asbestos Workers | | | |
| Boiler Makers | | | |
| Brick Layers | | | |
| Carpenters | | | |
| Carpet, Lino & Soft Tile Layers | | | |
| Cement Masons | | | |
| Drywall Hanger/Metal Stud Framer | | | |
| Drywall Finishers | | | |
| Electrical Workers | | | |
| Elevator Constructors | | | |
| Glaziers | | | |
| Heat and Frost Insulators | | | |
| Iron Workers (Structural/Rebar) | | | |
| Iron Workers (Ornamental/Architectural) | | | |
| Laborers | | | |
| Millwrights | | | |
| Operating Engineers | | | |
| Painters | | | |
| Pile Drivers/Diver | | | |
| Plumbers & Pipefitters | | | |
| Plasterers/Fire Proofers | | | |
| Roofers | | | |
| Sheet Metal Workers | | | |
| Sign Makers/Painters | | | |
| Sprinkler Fitters | | | |
| Teamsters | | | |

Page 3 of 4

PETITION TO COMPEL ARBITRATION - 40

## Core Employee

Contractor(s) or Sub Contractor(s) employing Core Employees must complete the following documentation.
**Core Employee(s) must place their names with the respective Union Hall dispatch prior to the employee(s) start of work.**

| | |
|---|---|
| Core employee information provided by | |
| Email Address | |
| Core employee information verified by | |

### Core Employee #1

| Employee Name: | | Hire Date: | |
|---|---|---|---|
| | | Classification: | |

The employee has met the qualifications contained in the CWA    Yes ⦿    No ◯

### Core Employee #2

| Employee Name: | | Hire Date: | |
|---|---|---|---|
| | | Classification: | |

The employee has met the qualifications contained in the CWA    Yes ◯    No ⦿

### Core Employee #3

| Employee Name: | | Hire Date: | |
|---|---|---|---|
| | | Classification: | |

The employee has met the qualifications contained in the CWA    Yes ◯    No ⦿

### Open-Shop Apprentice #1

| Employee Name: | | Hire Date | |
|---|---|---|---|
| Apprentice ID# | | Classification: | |

The employee has met the qualifications contained in the CWA    Yes ◯    No ⦿

### Open-Shop Apprentice #2

| Employee Name: | | Hire Date: | |
|---|---|---|---|
| Apprentice ID# | | Classification: | |

The employee has met the qualifications contained in the CWA    Yes ◯    No ⦿

Form completed by

print name          date          Signature

Page 4 of 4



**City of Seattle**
Edward B. Murray, Mayor

**Finance and Administrative Services**
Fred Podesta, Director

## ATTACHMENT E

### AMENDMENT RE: EXECUTIVE ORDER 2017-01
SEATTLE/KING COUNTY BUILDING TRADES COUNCIL
PACIFIC NORTHWEST REGIONAL COUNCIL OF CARPENTERS

This amends the City of Seattle Community Workforce Agreement (CWA) dated April 8, 2015 to incorporate agreements that comply and align with Mayor Murray's Executive Order 2017-01 (see Exhibit 1) titled Expanding Training and Career Opportunities in the Construction Trades. This amendment is effective as of May 23, 2017.

The purpose of this amendment is to expand the scope of the City of Seattle Community Workforce Agreement (CWA) to include those construction projects designated by the Mayor which are not otherwise incorporated as public works.

While not limiting the nature of projects that the Mayor may designate to be incorporated within the scope, the Mayor expects to consider for such designation additional construction projects that are practical for such a program and:

> (1) funded in whole or in part by the City of Seattle yet have private development authorities or management, and
> (2) where such City funding is no less than $5 million towards the construction of the project and such investments of City funds are in exchange for rights or public benefit, and
> (3) where such city funding is considered significant enough to the total project that the City may reasonably influence such provisions; and
> (4) the City has an ongoing interest in the project infrastructure, whether that be as a long-term future owner of the property or the building under construction

The following hereby amends the CWA:

1. The definition of "Covered Projects" shall include any public works administered by the City of Seattle as well as any other construction project designated by the Mayor to be a "Covered Project" that must abide in full to the CWA.
2. Any reference to "Public Work" shall be expanded to "Covered Projects."
3. Any reference to "public works project contract" or "City contract" shall be expanded to include "Development Agreement and/or other applicable binding agreement."
4. For each project that is declared by the Mayor to be a "Covered Project" aside from those already included as a city-administered public works project, the Department of Finance and Administrative Services, through the Director of City Purchasing and

Department of Finance and Administrative Services
700 Fifth Avenue, 41ˢᵗ Floor
P.O. Box 94687
Seattle, Washington 98124-4689

Tel (206) 386-0041
Fax (206) 684-7098
Hearing Impaired use the Washington Relay Service (7-1-1)
http://www.seattle.gov/FAS

Contracting Services (hereinafter referred to as "CPCS") shall provide written confirmation to the Executive Secretary of the Seattle/King County Building and Construction Trades Council, (hereinafter referred to as "Executive Secretary") and Pacific Northwest Regional Council of Carpenters.

5. CPCS shall provide monitoring and enforcement on all Covered Projects.
6. Notwithstanding those projects that are designated in writing by CPCS, the Executive Secretary and the Pacific Northwest Regional Council of Carpenters may also request or confirm an understanding in writing to the CPCS Director to assure clarity in the consideration and designation of projects that shall be considered "Covered Projects."

All other terms and conditions remained in-force and unchanged.

IN WITNESS, WHEREOF, in consideration of the terms, conditions and covenants contained herein, or attached or incorporated and made part hereof, the parties have executed this Amendment by having their authorized representatives affix their signatures below.

Signed:

By: _____
Nancy Locke, City of Seattle

By: _____
Monty Anderson, Seattle/King County Building Trades Council

By: _____
Chris Lambert, Pacific Northwest Regional Council of Carpenters

**ATTACHMENT F**

**City of Seattle Community Workforce Agreement**
**Seattle Building Trades/Pacific Northwest Regional Council of Carpenters/City of Seattle**
**Memorandum of Understanding**

This memorandum of understanding will confirm the votes taken by the Joint Administrative Committee (JAC) on May 22, 2018 concerning ARTICLE XV (PREFERRED ENTRY) Section 3.

The JAC voted to update the list of recognized Pre-Apprenticeship programs to include Direct Access to Laborers Education and Careers (DALEC) and the Trade Occupations Opportunity Learning Center (TOOL Center).

_____
**City of** Seattle

_____
Seattle Buil**d**ing **Trades**

_____
**Pacific Northwest Regi**o**nal Council of Carpenters**

PETITION TO COMPEL ARBITRATION - 44